IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| KIMBERLY CALDWELL, | ]<br>] |
| Plaintiff, | ]<br>] |
| vs. | ] Case No:<br>] |
| MONTGOMERY COUNTY<br>ASSESSOR OF PROPERTY, | ] Jury Demand<br>]<br>] |
| Defendant. | |

## COMPLAINT

Plaintiff Kimberly Caldwell, by and through counsel, brings this Complaint against Defendant Montgomery County Assessor of Property (hereinafter "Defendant" or "MCAP") and alleges as follows:

## JURISDICTION & VENUE

1. This action involves the application of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101, *et seq*.

2. This Court has jurisdiction of this action pursuant to 29 U.S.C. § 2617 and 28 U.S.C. §1331.

3. The claims asserted in this action arose in Montgomery County, Clarksville, Tennessee; therefore, proper venue for this action lies within the Middle District of Tennessee pursuant to 28 U.S.C. § 1391.

## ADMINISTRATIVE PREREQUISITE

4. Plaintiff has fulfilled all conditions precedent to the institution of this action under 42 U.S.C.A. § 2000e. A Notice of Right to Sue was issued on March 12, 2021 and was received by Plaintiff on March 15, 2021; a true and correct copy of which is attached hereto as Exhibit A. Further, Defendant is a government entity that employees more than fifteen employees.

## PARTIES

5. Plaintiff, Kimberly Caldwell, is an adult female individual and citizen of the United States who resides in Montgomery County, Clarksville, Tennessee.

6. At all relevant times, Kimberly Caldwell (hereinafter, "Plaintiff" or "Ms. Caldwell") was an employee of MCAP within the meaning of the meaning of the Family and Medical Leave Act, 29 U.S.C. § 2611(2)(A); and the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12111.

7. Defendant is a government entity and may be served within the limitations set by Tennessee law.

8. At all relevant times, Defendant engaged in commerce or in an industry or activity affecting commerce and employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year and was an "employer" pursuant to 29 U.S.C. § 2611(4)(A) of the FMLA.

## FACTUAL ALLEGATIONS

9. Ms. Caldwell is a resident of Tennessee residing in Montgomery County.

10. In January 2017, Plaintiff began employment with the Montgomery County Assessor of Property Office as a Deputy Clerk.

11. As a Deputy Clerk, Plaintiff was responsible for keeping records of commercial entities, including listing their assets.

12. Additionally, Plaintiff was responsible for documenting and facilitating routine audits of these entities.

13. Plaintiff's job required mostly administrative desk work, but she would occasionally make copies, file, and tend to the customer desk.

14. Plaintiff's immediate supervisor was Erinne Hester, who was the Property Assessor for the MCAP.

15. Around April 2019, Ms. Hester made it clear to Plaintiff that any office needs, such as time off, doctors' visits, and employment disputes, should be handled by Ms. Caitlyn Swaffer, the Deputy Clerk Mapper.

16. In early 2019, Plaintiff began experiencing extreme leg pain.

17. Plaintiff was unsure of what was causing this leg pain, so she continuously scheduled several appointments with her physician to discover the proper diagnosis.

18. This leg pain created discomfort and soreness preventing her from certain major life activities such as walking, standing, and situating herself on tall surfaces such as barstools and high chairs.

19. During this time, Plaintiff had extended uncertainty about her condition and began experiencing depression and anxiety about her health.

20. This anxiety was exacerbated by her constant need to maintain medical evaluations in light of her work.

21. Plaintiff's anxiety was further exacerbated by the demeaning and derogatory harassment she received from Ms. Hester related to her medical condition and her treatments.

22. As a result, Plaintiff mostly used her vacation days for her appointments in an effort not to burden the MCAP with time-constraints and additional costs.

23. However, this measure was frowned upon by Plaintiff's supervisor, Ms. Hester.

24. In an April 4, 2019 e-mail, Plaintiff requested to leave at 3:00 P.M. on Friday for another examination of her condition.

25. Ms. Hester responded, "I'm not in love with the idea considering everything you have going on and that fact that you haven't yet asked me to work more hours" and told Plaintiff to "expect me to mandate some overtime this month and next."

26. Plaintiff regularly saw a chiropractor and continuously visited the physicians in the "on-site" program covered under MCAP insurance.

27. During her tenure at MCAP, Plaintiff was never subjected to disciplinary review and received no formal discipline for her work quality or customer engagement.

28. Up until this point, Plaintiff never took medical leave under the FMLA.

29. Eventually in April 2019, Plaintiff's leg pain became too much for certain work activities and she felt the need to communicate this with her supervisor.

30. Plaintiff informed Ms. Swaffer that her leg pain was unbearable and affecting her physical work duties such as standing at the desk, filing, and standing to make copies.

31. Since making copies was a small part of her job, Plaintiff requested that she do more desk work and transfer more copy-making duties to the other employees.

32. Ms. Hester stated that this adjustment was untenable as it would unfairly position the other deputy clerks.

33. Mr. Derek Flanigan, the Deputy Property Assessor, then offered a tall bar stool as a reasonable accommodation to standing while copying.

34. In late April 2019, Plaintiff tried the bar stool out to see if it would prevent or mitigate her leg pain.

35. Unfortunately, she experienced more pain from leveraging herself onto the high bar stool than just standing.

36. In a May 3, 2019 e-mail to Ms. Hester, Plaintiff expressed that this high bar stool was still causing her pain and pleaded for an accommodation because it was "the first request I've [she had] made or anything or any type of accommodation."

37. In this e-mail, Plaintiff also pointed out the efficacy of her colleague's "desk scanner."

38. A few months prior, Plaintiff was told that she would receive a scanner that would be fixed on her normal work desk.

39. Another employee had such a desk scanner, which would sit at normal desk level and not be required to situate on a high bar stool or stand.

40. Having a scanner at her desk would also reduce the amount of time Plaintiff spent walking and/or standing to scan documents.

41. Regardless, Defendant never made any effort to provide a desk scanner after Plaintiff's complaint and request for accommodation.

42. In the May 3 e-mail, Plaintiff also expressed her need to keep making doctor's appointments for further diagnosis.

43. In that same e-mail, she also outlined the efforts she had been taking on her own to continue to see her doctor and minimally affect the MCAP's schedule.

44. Regardless, Defendant never attempted to accommodate Plaintiff at all after her complaint about the bar stool, her leg pain, and her chronic depression and anxiety relating to her medical condition.

45. Instead, Ms. Hester informed Plaintiff that she "needed" to provide a doctor's note about her condition showing that she could not stand.

46. Ms. Hester also informed Plaintiff that until such a note was received, she would have to continue her work duties including extensive standing at the customer desk and making copies.

47. After Plaintiff produced a doctor's note showing her working restrictions, Ms. Hester stated that Plaintiff "needed to go on FMLA."

48. Additionally, in her May 6, 2021 e-mail, Ms. Hester clarified that she needed "all hands on deck" because Plaintiff was "one in a department of two in a year of reevaluation."

49. Plaintiff did not need FMLA leave, she simply needed a reasonable accommodation allowing her to perform her essential functions.

50. Rather than engaging in the interactive process with Plaintiff, Ms. Hester told her she needed to take FMLA leave.

51. Consequently, Plaintiff was required to apply for FMLA.

52. Plaintiff was granted FMLA from May 15th to August 6th for her medical issues.

53. In that time, Plaintiff was diagnosed with Fibromyalgia, depression, and anxiety.

54. The symptoms of Plaintiff's fibromyalgia include but are not limited to: pain and stiffness all over the body, fatigue and tiredness, depression and anxiety, sleep problems, problems with thinking, memory, and concentration, and headaches, including migraines.

55. On July 29, 2019, Ms. Hester reached out to Plaintiff regarding her potential return date, stating that she needed to "come in" to talk to MCAP's Human Resources Department about getting reacquainted with work.

56. At this time, Plaintiff had a doctor's appointment scheduled for reevaluation of her condition, specifically to determine her ability to return to work.

57. At that time, Plaintiff's primary physician recommended that Plaintiff return to work in October as she needed more time for a full recovery.

58. Plaintiff's doctor also provided her a note to this effect indicating an extension on her working restrictions.

59. On July 30, Ms. Hester reached out to see if Plaintiff could meet with her and Mr. Tim Swaw to discuss her transition back to work.

60. Plaintiff agreed to meet them both that afternoon on Friday, August 2, 2019.

61. On August 2, 2019, Defendant informed Plaintiff that she was to be terminated effective August 6, 2019 due to the fact she could not return to work.

62. While Plaintiff was still in the room, Ms. Hester turned to Mr. Swaw asking when she could start posting Plaintiff's position for new employees.

63. At the time Plaintiff was required to take FMLA leave, she was capable of performing the essential functions of her job, with or without a reasonable accommodation.

64. By requiring Plaintiff to take FMLA beginning in May 2019, Defendant caused Plaintiff to prematurely exhaust her FMLA leave.

65. When Plaintiff's doctor requested additional leave, Defendant did not engage in the interactive process to determine if additional leave could be provided as a reasonable accommodation under the ADA.

66. At all times material, Plaintiff was capable of performing the essential functions of her job with a reasonable accommodation.

67. Defendant failed to engage in the interactive process under the ADA.

68. Defendant failed to accommodate Plaintiff.

69. In requiring Plaintiff to take unnecessary leave under the FMLA, Defendant interfered with Plaintiff's rights under the FMLA.

70. Defendant terminated Plaintiff because of her FMLA leave and her disability.

### COUNT I – VIOLATIONS OF FAMILY AND MEDICAL LEAVE ACT
### (INTERFERENCE AND RETALIATION)

71. Plaintiff re-alleges and incorporates herein the foregoing paragraphs.

72. Plaintiff alleges Defendant qualifies as an "employer" as defined in the FMLA, 29 U.S.C. § 2611(4) and employed over fifty (50) or more employees within a seventy-five (75) mile radius from the location in which the Plaintiff worked.

73. Plaintiff alleges she was an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2), as she had been employed continuously by Defendant for over a twelve-month period and worked at least 1,250 hours of service in the prior twelve-month period.

74. Plaintiff was entitled to "restoration to position" as defined in the FMLA, 29 U.S.C. § 2614(a)(1).

75. Defendant interfered with Plaintiff's right of entitlement to leave by requiring her to take leave when it was not needed, resulting in the premature exhaustion of her FMLA leave.

76. Defendant interfered with Plaintiff's attempt to exercise her right of entitlement to the restoration of her position or an equivalent position under the FMLA, pursuant to 29 U.S.C. § 2615(a).

77. Defendant retaliated against Plaintiff after she exercised her right of entitlement to leave under the FMLA, pursuant to 29 U.S.C. § 2615(a).

78. Defendant is responsible and liable under the FMLA, 29 U.S.C. § 2617(a).

79. Defendant in failing to restore Plaintiff to her position as well as terminating her employment after taking FMLA leave, willfully violated the anti-interference and retaliation provisions of the FMLA, 29 U.S.C. § 2615.

80. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

### COUNT II – VIOLATIONS OF AMERICANS WITH DISABILTIES ACT (DISABILITY DISCRIMINATION, RETALIATION, FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS, & FAILURE TO ACCOMMODATE)

81. Plaintiff re-alleges and incorporates herein the foregoing paragraphs.

82. Plaintiff was a qualified individual with a disability, she had a record of such disability and/or she was perceived as an individual with a disability.

83. Plaintiff was disabled in that she has been diagnosed with fibromyalgia, depression, and anxiety, which substantially limits several major life activities.

84. Plaintiff's disability also substantially limited several major bodily functions.

85. Defendant regarded Plaintiff as disabled by perceiving that her impairments limited the major life activity of working.

86. Defendant discriminated against Plaintiff on the basis of her disability and/or perceived disability in violation of the ADAAA, 42 U.S.C. § 12112, *et. seq*.

87. Plaintiff could perform the essential functions of her job with or without reasonable accommodation.

88. Defendant was aware of Plaintiff's disability.

89. Plaintiff requested a reasonable accommodation of limiting standing and sitting on high surfaces at work.

90. Plaintiff requested a reasonable accommodation of a desktop scanner.

91. Defendant did not engage nor provide an alternative to this accommodation.

92. Defendant did not engage nor provide a desk scanner in compliance and in response to Plaintiff's disability.

93. Plaintiff requested a reasonable accommodation of occasional time off to see her doctor for a continuing diagnostic and treatment process.

94. Defendant did not engage in providing a flexible work schedule or time off in compliance with Plaintiff's disabilities.

95. In fact, Defendant would admonish Plaintiff for taking time to go see her doctors.

96. Defendant failed to engage in the interactive process to determine whether Plaintiff's reasonable accommodation would create an undue hardship.

97. Defendant failed to provide Plaintiff's reasonable accommodations of occasional time off for appointments, a desk scanner, and reducing her time standing or sitting on a high chair at work.

98. Plaintiff's requested reasonable accommodations would not have created an undue hardship on Defendant's business operations.

99. Defendant took an adverse employment action against Plaintiff by denying her reasonable accommodation.

100. Defendant took an adverse employment action against Plaintiff by terminating her employment.

101. Defendant retaliated against Plaintiff for engaging in protected activity under the ADAAA.

102. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

103. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**WHEREFORE**, Plaintiff requests this court enter judgment in favor of the Plaintiff and against Defendant, for:

(1) all amounts of wages Plaintiff should have received under federal law but for Defendant's willful violation of her rights, plus an equal amount in liquidated damages pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2617(a)(1)(A);

(2) a judgment against the Defendant for damages, both compensatory and punitive, in an amount to be determined at trial;

(3) all reasonable attorney's fees, costs and interest pursuant to state and federal law; and

(4) any such other legal or equitable relief as may be appropriate or to which she may be entitled under state and federal law.

Respectfully Submitted,

**THE EMPLOYMENT & CONSUMER LAW GROUP**

**/s/ CULLEN D. HAMELIN**
**G. BRANDON HALL, BPR No. 034027**
**CULLEN HAMELIN, BPR No. 037317**
1720 West End Ave., STE 402,
Nashville, TN 37203
(615) 850-0632

*Attorneys for Plaintiff*